IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WENDY ASTON-MARTIN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) No. 1:24-CV-06172-JPC |
| | ) |
| WARNERMEDIA DIRECT, LLC, | ) |
| | ) |
|     Defendant. | ) |

**PLAINTIFF'S MOTION TO REMAND TO THE GENERAL SESSIONS COURT OF COFFEY COUNTY, TENNESSEE**

Plaintiff Wendy Aston-Martin respectfully moves to remand this case to the General Sessions Court of Coffey County, Tennessee, the small claims court in which it was filed. Defendant WarnerMedia's removal of this action to federal court violates the parties' agreement to bring and resolve their disputes in either arbitration or small claims court. Ms. Aston-Martin chose the latter option, and the parties' agreement requires WarnerMedia to honor that choice. WarnerMedia's improper removal must therefore be promptly remedied by a remand to the General Sessions Court of Coffee County, Tennessee.

**INTRODUCTION**

WarnerMedia owns a streaming service known as either HBO Max or simply Max. This service allows customers, such as the Plaintiff, Wendy Aston-Martin, to watch video content including movies and television shows. Ms. Aston-

1

Martin brought this action against WarnerMedia after she learned that the Defendant disclosed her private video watching history with other companies for targeted advertising in violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. See also Doc. 1-2 at 22-24. She brought her action in the General Sessions Court of Coffey County—her home state of Tennessee's small claims court—because she agreed to terms written and imposed by WarnerMedia that required all disputes, except those concerning bodily injury or intellectual property, to be heard in arbitration or small claims court. Specifically, she and WarnerMedia "agree[d] to resolve those disputes through binding arbitration or small claims court instead of in courts of general jurisdiction." Ex. A (HBO Max Terms of Use (Updated Apr. 29, 2020), at 33); Ex. B (HBO Max Terms of Use (Updated Oct. 19, 2021), at 40); Ex. C (HBO Max Terms of Use (Updated Nov. 1, 2022), at 31); Ex. D (HBO Max Terms of Use (Updated Dec. 20, 2022), at 31); Ex. E (Max Terms of Use (Updated May 23, 2023), at 25); Ex. F (Max Terms of Use (Updated Feb. 27, 2024), at 34).

Furthermore, the parties agreed that those disputes must be brought in arbitration or "in small claims court seeking only individualized relief, so long as the actions remains in that court and is not removed or appealed to a court of general jurisdiction." Ex. A at 35; Ex. B at 44; Ex. C at 32–33; see also Ex. D at 32–33 (minor alterations omitting the language "remains in that court"); Ex. E at

26–27 (same as Ex. D); Ex. F at 36 (same as Exs. D and E). By removing this action to federal court, WarnerMedia contravened the clear terms of the parties' agreement that allow Ms. Aston-Martin to pursue her claims in Tennessee small claims court.

This breach by WarnerMedia represents the latest in its campaign of misconduct to avoid liability for violation of the VPPA. The campaign began when consumers filed a putative class action alleging VPPA violations in federal court in the Southern District of New York. See McDaniel v. Home Box Off., Inc., No. 22-CV-1942 (VEC), 2023 WL 1069849, at *1 (S.D.N.Y. Jan. 27, 2023). WarnerMedia responded to that lawsuit by successfully compelling it to arbitration with the American Arbitration Association (AAA). Id. at *4.

Once it escaped that class action by compelling AAA arbitration, WarnerMedia next decided that it did not want to arbitrate before the AAA after all. See Brooks v. WarnerMedia Direct, LLC, No. 2-23-CV-07579, ECF No. 1 (C.D. Cal. Sept. 12, 2023). When many consumers tried to initiate arbitrations with the AAA, WarnerMedia refused to honor its obligation to register its arbitration agreement with the AAA and asked the AAA to close the arbitrations that consumers had already filed against it. Id. ¶ 9. As part of its plan to avoid liability, WarnerMedia then posted a changed arbitration agreement on its website that it obviously believes is more favorable to the company—and less favorable to

consumers. Id. ¶ 22. Some of the customers who filed arbitration are seeking to compel WarnerMedia to arbitrate with them before the AAA, and that matter is pending in the Southern District of New York. See Brooks v. WarnerMedia Direct, LLC, No. 1:23-CV-11030-KPF (S.D.N.Y.).

The contract in place before WarnerMedia attempted to evade AAA Arbitration also contained an express provision allowing customers to reject future changes to the arbitration section and arbitrate any dispute between the parties in accordance with the previous contract:

> **(g)** Future Changes to Arbitration Provision: Notwithstanding any provision in this agreement to the contrary, we agree that if we make any future change to this arbitration provision (other than a change to the Notice Address), you may reject any such change by sending us written notice within 30 days of the change to the arbitration Notice Address provided above. By rejecting any future change, you are agreeing that you will arbitrate any dispute between us in accordance with the language of this provision.

Ex. C at 38-39. There can be no doubt that WarnerMedia made a future change to this arbitration provision as contemplated by this section. Nor can there be any serious question as to whether Wendy Aston-Martin validly opted out of the agreement, as WarnerMedia itself admitted by attaching her notice, sent just three days after the terms changed, in this case while it was still in Tennessee. See E.D. Tenn., Case no. 4:24-cv-00043-TRM-CHS, Doc. 24-7 at 2.

Plaintiff Wendy Aston-Martin decided that she wanted no part of WarnerMedia's flip-flopping from one arbitration forum to another. She decided to

4

exercise her contractual right under all potentially applicable terms to forgo arbitration and litigate in small claims court. The parties' agreement requires WarnerMedia to honor Plaintiff Aston-Martin's choice to litigate in small claims court because this action falls within the General Sessions Court's limited jurisdiction. By agreeing to litigate in that court, WarnerMedia waived any right to remove the case to any other court, including this federal court.

## ARGUMENT

As an initial matter, though federal district courts typically face the question of whether to remand to the state court in their own state, there is no question that transferee courts have the power to remand to the court in which the case was originally filed. See, e.g., In re New England Mut. Life Ins. Co. Sales Practices Litig., 324 F. Supp. 2d 288, 291 (D. Mass. 2004) (calling it "settled law" that a transferee court can remand to state court in the original jurisdiction); Meyers v. Bayer AG, 143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001) (noting that in cases that raise difficult or recurring issues across multiple pieces of the litigation, the transferee court in an MDL should often decide whether to remand, and the remand would be to the court where the case was originally filed). In contrast, a federal district court cannot remand a case to a court in which it did not originate, because "remand" means "send back. It does not mean send elsewhere." Allied Signal Recovery Trust v. Allied Signal, Inc., 298 F.3d 263, 270 (3d Cir. 2002). In

Allied Signal, the Third Circuit explained that while a transferee court cannot remand to state court in its own state, it can remand to the court where the case originated:

> This result will leave the District Court faced with the problem, it described in attempting to remand, that it could not itself send the case to the Florida state court because it was not the transferor court. We would suggest, however, that a transferee court is deemed to inherit all the authority of a transferor court. As the Tenth Circuit has stated: "The transferee court's powers are coextensive with those of the transferor court; it may issue any order or render any judgment that could have been made in the transferor court had the transfer never taken place." Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir.1991). We have echoed the same sentiment. In Bloom, we stated that, "following the change of venue [the transferee court] the District of Jersey had the same authority with respect to disposition of the case as had [the transferor court,] the District Court for the Southern District of Florida." 755 F.2d at 358. Accord, Abels v. State Farm Fire & Casualty Co., 770 F.2d 26, 34 (3d Cir.1985) (instructing district court in Western District of Pennsylvania to remand case to Superior Court of Los Angeles County, California).

298 F.3d at 271.

Additionally, it is clear that the court in the Eastern District of Tennessee that transferred the case did not rule on the motion to remand, instead denying it as moot when it transferred the case to this Court. Aston-Martin v. WarnerMedia Direct, LLC, 2024 WL 3516811 at *1 (E.D. Tenn. July 24, 2024). Thus, the Tennessee court's statement that Plaintiff should have filed in small claims court in New York, fourteen-hundred miles away from home, if she wanted to proceed in small claims court, is dicta, and does not form a necessary part of the court's

6

decision on the motion to transfer. That ruling required only that the court determine that the only *federal* court permitted to hear the parties' dispute over whether the small claims court was removable and which arbitration terms apply is the one in the Southern District of New York. It must be noted here that each version of the parties' agreement explicitly states that the New York venue provision explicitly does not apply to disputes that are "subject to arbitration under Section 5.4 (Dispute Resolution) of the agreement." <u>See, e.g.</u>, Ex. B at 56. Even if the parties' contract can be read to anticipate having consumers from all over the country file small claims court cases in New York (it cannot), the small claims courts of this state would lack jurisdiction and be an improper venue for events that occurred entirely in Tennessee.

    Furthermore, it would be entirely ridiculous for WarnerMedia to include a small claims court exception in its arbitration and then require consumers from all fifty states to travel to New York to exercise it. To the extent that it argues this absurd interpretation today (which it never did in Tennessee), this is simply further proof that WarnerMedia believes that it can manipulate both consumers and the court however it wishes in its contracts. Such an absurd interpretation would also directly contradict the American Arbitration Association's Consumer Due Process Protocol, which guarantees both access to small claims court for the consumer in Principle 5 and a "location which is reasonably convenient to both parties with due

consideration of their ability to travel" in Principle 7. Principle 5 also states that all arbitration agreements "should make it clear that all parties retain the right to seek relief in a small claims court for disputes or claims within the scope of its jurisdiction." Ex. G, AAA Due Process Protocol at Principle 5. Here, there is no doubt that Ms. Aston-Martin's claims are within the jurisdiction of the General Sessions Court in Tennessee. This principle, which is likely why WarnerMedia included the small claims exception in the first place, guarantees as a matter of due process that Ms. Aston-Martin's claims may be heard in small claims court.

As the party seeking federal jurisdiction, WarnerMedia bears the burden of establishing that its removal of the case is proper. McCulloch Orthopaedic Surgical Services, PLLC v. Aetna, Inc., 857 F. 3d 141, 145 (2d Cir. 2017) ("The defendant, as the party seeking removal and asserting federal jurisdiction, bears the burden of demonstrating that the district court has original jurisdiction."); see also Montefiore Med. Ctr. v. Teamsters Local 272, 642 F. 3d 321, 327 (2d Cir. 2011). Furthermore, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state government, federal courts construe the removal statute narrowly, resolving any doubts against removability." Hoffman v. Vitamin Shoppe Industries Inc., 2015 WL 224406 at *2 (S.D.N.Y. Jan. 16, 2015) (quoting Purdue Pharma L.P. v.

8

Kentucky, 704 F. 3d 208, 213 (2d Cir. 2013) (quoting in turn Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 274 (2d Cir. 1994).

WarnerMedia cannot meet its burden. Remand to the General Sessions court of Coffey County is required by application of the plain language of the parties' agreement, which specifies small claims court as the exclusive venue for court resolution of arbitrable disputes.

### A. The Agreement's Small Claims Exception Designating Small Claims Courts as the Exclusive Forum for Court Resolution of Arbitrable Disputes is Valid and Enforceable.

The small claims exception in the parties' agreement, which allows either party to bring disputes in small claims court, is a valid and enforceable forum selection clause, and precludes WarnerMedia from seeking federal jurisdiction.

A forum selection clause that has been reasonably communicated to the parties is "presumptively enforceable." Starkey v. G Adventures, Inc., 796 F.3d 193, 197-98 (2d Cir. 2015). Here, WarnerMedia itself wrote the forum selection clause allowing Ms. Aston-Martin to choose small claims court. It can hardly claim to be unfairly surprised when she did so. The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.'" Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tx., 571 U.S. 49, 62 (2013)). Therefore, "a

valid forum selection clause [should be] given controlling weight in all but the most exceptional cases." Atl. Marine Constr. Co., 571 U.S. at 63.

Plaintiff Wendy Aston-Martin agreed to the HBO Max Terms of Use ("Terms") when she signed up for an HBO Max video streaming account. WarnerMedia's Terms contain a mandatory arbitration provision for all disputes, aside from two narrow exceptions for personal injury and intellectual property claims:

> a. **Claims Subject to Arbitration:** [WarnerMedia] and you agree to arbitrate **all disputes and claims** between us, except for claims arising from bodily injury or that pertain to enforcing, protecting, or the validity of your or our intellectual property rights . . . . This agreement to arbitrate is intended to be broadly interpreted.

Ex. A at 34; Ex. B at 43; *see also* Ex. C at 31–32 (same except substituting "HBO MAX" as the entity name); Ex. D at 31 (same as Ex. C); Ex. E at 26 (same except substituting "Max" as the entity name with minor wordsmithing changes); Ex. F at 35 (same as Ex. E).[1] There is no dispute that Ms. Aston-Martin's video privacy dispute is within the scope of the parties' arbitration agreement.

---

[1] As stated by WarnerMedia in its Declaration in Support of its Motion to Compel in McDaniel:

> Anyone who purchases a subscription to HBO Max—whether it is via a third party distributor such as Amazon Prime Channels or AT&T, or directly with WarnerMedia—is required to create an account with HBO Max before they are able to activate their subscription. This has always been the case since HBO Max launched on May 27, 2020.
>
> . . .

10

Therefore, under the agreement, these claims must either be brought in arbitration, or in small claims court, pursuant to an exception in the parties' agreement: "Notwithstanding the foregoing, either party may bring an action in small claims court seeking only individualized relief, so long as the action remains in that court and is not removed or appealed to a court of general jurisdiction." Ex. A at 35; Ex. B at 44; Ex. C at 32–33; *see also* Ex. D at 32–33 (minor alterations omitting the language "in that court"); Ex. E at 26–27 (same as Ex. D); Ex. F at 36 (same as Exs. D and E). And the parties "agree[d] to resolve those disputes through binding arbitration or small claims court instead of in courts of general jurisdiction." Ex. A at 33; Ex. B at 40; Ex. C at 31; Ex. D at 31; Ex. E at 25; Ex. F at 34.

The parties' agreement is crystal-clear: either party may bring an otherwise arbitrable dispute in small claims court seeking individualized relief. In Tennessee, the small claims court is the General Sessions Court. See Tenn. Code § 16-15-501; Thus, the General Sessions Court properly has jurisdiction over Ms. Aston-Martin's small-claims dispute. This Court should give full effect to the plain

---

> During the account creation process with HBO Max, all subscribers are presented with HBO Max's [Terms of Use] via a hyperlink in most instances, and in some instances via a URL.

McDaniel, ECF No. 19, ¶¶ 8, 11.

11

language of the parties' agreement and remand this action to the General Sessions Court of Coffey County, Tennessee.

### B. The Small Claims Exception Bars Removal to this Court

By the express language of the parties' agreement, small claims courts, and not this Court, are the sole venue for court resolution of otherwise arbitrable disputes. The agreement, therefore, bars removal of this action.

A party can waive its right to federal court removal by contract. See, e.g., Elliott Associates, L.P. v. The Republic of Panama, 1996 WL 474173 (S.D.N.Y. Aug. 21, 1996) (contract contained express and irrevocable waiver of removal); L&L Painting Co., Inc. v. Odyssey Contracting Corp., 2008 WL 2856475 at *1 (S.D.N.Y. July 22, 2008) (same). In addition to express waivers of removal, a party also waives the right to remove when it agrees to allow disputes to be heard in a state court, such as the General Sessions court. For example, courts have long held that a "service of suit clause" in an insurance agreement, which allows the suit to be brought in state court, also waives the right to remove the case. See, e.g., Travelers Ins. Co. v. Keeling, 1993 WL 18909 at *3 (S.D.N.Y. Jan. 19, 1993) (citing, inter alia, General Phoenix Corp. v. Maylon, 88 F. Supp. 502, 503 (S.D.N.Y. 1949); Foster v. Chesapeake Ins. Co., 933 F.2d 1207, 12166-18 (3d Cir. 1993); City of Rose v. Nutmeg, 931 F.2d 13, 16 (5th Cir. 1991); Welborn v. Classic Syndicate, Inc., 1992 WL 358104 at *3 (W.D.N.C. Nov. 25, 1992). In

these cases, and numerous others that followed them, nothing in the contract explicitly stated that the defendant waived the right to remove; rather the clause allowed the plaintiff to bring a case in state court because it promised that the defendant would submit to the jurisdiction thereof. Travelers Ins., 1993 WL 18909 at *3. Similarly, the contract at issue explicitly allows the consumer to bring the case in small claims court, thereby waiving the right to federal court removal.

Courts have also found that a forum selection clause can waive the right to remove when it chooses a particular court, even if explicit language waiving removal is not present. For example, the Western District of New York stated:

> "[I]t is well established that a forum selection clause may act as a waiver of defendant's right to remove an action to federal court." JP Morgan Chase Bank, N.A. v. Reijtenbagh, 611 F.Supp.2d 389, 390 (S.D.N.Y.2009). In general, courts look to the "plain and ordinary meaning" of a forum selection clause to determine whether it amounts to a waiver of the right to remove. New Jersey v. Merrill Lynch & Co., Inc., 640 F.3d 545, 548 (3d Cir.2011). See, e.g., Slater v. Energy Services Group Intern., Inc., 634 F.3d 1326, 1330 (11th Cir.2011); Klotz v. Xerox Corp., 519 F.Supp.2d 430, 434 (S.D.N.Y.2007); HongKong and Shanghai Banking Corp. Ltd. v. Suveyke, 392 F.Supp.2d 489, 492 (E.D.N.Y.2005).
>
> There is also authority that to be given effect by the courts, "[a]ny waiver of the right of removal 'must be clear and unequivocal. If the forum selection clause is ambiguous in that it is susceptible of two reasonable meanings, it will be construed against the party who drafted it.'" JP Morgan Chase Bank, 611 F.Supp.2d at 390 (quoting John's Insulation, Inc. v. Siska Constr. Co., 671 F.Supp. 289, 294 (S.D.N.Y.1987)).
>
> That does not mean, however, that a forum selection clause must contain some particular language to constitute a waiver of the right to

remove. The question is simply whether, giving the contract its plain, ordinary meaning, it clearly demonstrates an intent by the parties to effectuate a waiver. See JP Morgan Chase Bank, 611 F.Supp.2d at 390 (determining waiver issue by looking to whether forum selection clause was ambiguous); see also Merrill Lynch, 640 F.3d at 548 (3d Cir.2011) (stating that the "courts have required that waivers of removal rights be 'clear and unequivocal,' ... have done so in the context of non-contractual, litigation-based waivers or have relied upon such cases," and cautioning that where the parties have entered into a contract containing a forum selection clause, the "clear and unequivocal" standard should not be made "so stringent as to be contrary to the right of parties to contract in advance regarding where they will litigate") (internal quote omitted).

Frankford Crossing Shopping Center Dallas, Tx. Ltd. P'ship v. Pho Partners, LLC, 942 F. Supp. 2d 366, 372 (W.D.N.Y. 2013). Here, under the plain language of the contract, the only possible fora for determination on the merits are small claims court and arbitration. The contract leaves the choice to the consumer. Plaintiff Wendy Aston-Martin chose small claims court.

WarnerMedia waived its right to federal court removal when it agreed that Ms. Aston-Martin could bring her dispute in small claims court. Moreover, WarnerMedia explicitly agreed *not* to remove any such small claims actions through its language in the agreement specifying that such disputes cannot be "removed." Ex. A at 35; Ex. B at 44; Ex. C at 33; *see also* Ex. D at 32; Ex. E at 26; Ex. F at 36. WarnerMedia violated the parties' agreement by removing the case to federal Court. This action should be remanded.

## **CONCLUSION**

In its latest effort to avoid liability for its data privacy violations, WarnerMedia has removed this action, violating the parties' agreement to resolve any arbitrable disputes in arbitration or small claims court. This Court should refuse to indulge WarnerMedia's cynical efforts at avoiding the contract it drafted. Instead, this Court should issue an order remanding this action to the General Sessions Court of Coffey County, Tennessee.

Respectfully submitted this 25th day of September, 2024

/s/    Dargan M. Ware
Attorney for Plaintiff

Dargan M. Ware
DAVIS & NORRIS, LLP
2154 Highland Avenue S.
Birmingham, AL 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
dware@davisnorris.com

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of the foregoing was served on all counsel of record in this case through the CM/ECF electronic filing system of the United States District Court for the Southern District of New York on September 23, 2024.

      /s/    Dargan M. Ware
      Attorney for Plaintiff