# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WENDY ASTON-MARTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:24-CV-06172-JPC |
| ) | |
| WARNERMEDIA DIRECT, LLC, ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S RESPONSE TO MOTION TO COMPEL ARBITRATION

WarnerMedia's Motion to Compel Arbitration seeks to force Plaintiff Wendy Aston-Martin to arbitrate in a forum she never agreed to, despite the fact that the contract it wrote expressly allows her to opt to retain the prior arbitration provision, using a procedure WarnerMedia admits she followed. Worse than that, it does so in a circumstance where Ms. Aston-Martin never even refused to arbitrate, so the prerequisite for filing such a motion has not been met. This is par for the course for WarnerMedia in this dispute, as the only reason Ms. Aston-Martin has been dragged into this Court a thousand miles from her home is that WarnerMedia refused to abide by its own contract. If WarnerMedia had simply followed its contract (any of the various terms it wrote), this case would have proceeded in small claims court (the General Sessions Court of Coffee County, Tennessee) and would be long since over by now.

1

A federal district court's power to compel arbitration stems entirely from Section 4 of the Federal Arbitration Act, which authorizes a district court to act only when a party has been "aggrieved *by the alleged failure, neglect, or refusal of another to arbitrate*" 9 U.S.C. § 4. This language makes it clear that WarnerMedia does not have standing under Section 4. Defendant's motion to compel arbitration fails on the very first step—WarnerMedia cannot show that it has been "aggrieved by the alleged failure, neglect, or refusal" of Wendy Aston-Martin to arbitrate. Instead, WarnerMedia acknowledges that she filed this case in small claims court as every potentially applicable version of the parties' agreement allows her to do. Incongruously, it then argues that either *its choice* to remove the action, or the actions of parties and counsel not before this Court, somehow constitute a failure or refusal to arbitrate by Ms. Aston-Martin. That makes no sense. Thus, the entire basis of WarnerMedia's motion to compel arbitration is illogical and contrary to law.

This Court lacks the power to compel arbitration in this case for three reasons, each of which independently requires the motion to compel arbitration to be denied. *First*, this case belongs in the General Sessions Court of Coffey County, Tennessee as Plaintiff fully explains in her motion to remand. Because WarnerMedia waived the right to remove in every version of the contract, this court cannot decide the motion to compel arbitration. *Second*, the court cannot compel arbitration where the opposing party has not refused to arbitrate. Far from refusing to abide by the

arbitration agreement, Wendy Aston-Martin has done only what all the potentially applicable agreements allow her to do—file in small claims court—as WarnerMedia concedes. *Third*, WarnerMedia cannot compel Ms. Aston Martin to arbitrate in an arbitral forum she never agreed to, where WarnerMedia's contract gave her a right to keep the previous arbitration terms and she validly exercised that right.

No refusal to arbitrate has occurred here, and there is no basis for this court to compel arbitration. This Court should deny WarnerMedia's motion to compel.

### A. This Case Should Be Remanded Because WarnerMedia Waived its Right to Remove.

The potentially applicable contracts between the parties, each written by WarnerMedia, all give consumers like Plaintiff the right to proceed in small claims court. The contract's promise that Ms. Aston-Martin could proceed in small claims court so long as the case remained there must be interpreted to require the company to allow the case to proceed in small claims court, because any other reading fails to give effect to the promise to allow the claim to be brought in small claims court and renders the promise illusory. See, e.g., Cook v. EaglePicher Technologies, LLC, 2025 WL 360814 at *4 (S.D.N.Y. Jan. 11, 2024) ("the Court shall give all 'words and phrases' their 'plain meaning' [and] 'construe the contract to give full meaning and effect to all its provisions…'") (citing Cisco Sys. Inc., v. Synamedia Ltd., 557 F. Supp. 3d 464, 472 (S.D.N.Y. 2021) and Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie, 784 F.3d 78, 86 (2d Cir. 2015)); M & G

3

Polymers USA, LLC v. Tackett, 574 U.S. 427, 440 (2015) ("[The illusory promises] doctrine instructs courts to avoid constructions of contracts that would render promises illusory because such promises cannot serve as consideration for a contract." (citing 3 Williston § 7:7 (4th ed. 2008)).

When WarnerMedia made this promise to Ms. Aston-Martin, it waived its right to remove the case, again as Plaintiff as explained in her motion to remand. (Doc. 43). See, e.g., Frankford Crossing Shopping Center Dallas, Tx. Ltd. P'Ship v. Pho Partners, LLC, 942 F. Supp. 2d 366, 372 (W.D.N.Y. 2013); Travelers Ins. Co. v. Keeling, 1993 WL 18909 at *3 (S.D.N.Y. Jan. 19, 1993)). Thus, this court should grant the motion to remand without reaching any of the other motions before it. Courts in the Second Circuit regularly hold that when a motion to remand is due to be granted, the District Court should not address other aspects of the parties' dispute. See, e.g., Foy v. Pratt & Whitney Group, 127 F.3d 229, 231 (2d Cir. 1997) (reversing with instructions to remand to state court and stating that "[w]e do not reach" other issues in the case); Austin v. Port Auth. of New York and New Jersey, 1993 WL 149033 at *3 (S.D.N.Y. May 5, 1993) ("I remand this case to the New York state court. I thus do not reach the question of whether plaintiffs failed to fulfill the conditions precedent to suit required by New York legislation."); Cooper Square Realty, Inc. v. Jensen, 2005 WL 53284 at *2 (S.D.N.Y. Jan. 10, 2005) (declining to address any other issues after remanding to state court.)

**B. No Basis Exists for the Court to Compel Arbitration, Because Ms. Aston-Martin Has Not Failed, Neglected, or Refused to Arbitrate.**

As noted above, the Federal Arbitration Act empowers a court to compel arbitration only where a party has been "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration…" 9 U.S.C. § 4. To enter an order under Section 4 of the FAA, the court must first find that Wendy Aston-Martin refused to arbitrate pursuant to some agreement. This cannot be done, because all of the potentially applicable agreements allow her to file in small claims court. In other words, WarnerMedia cannot point to anything that Plaintiff did that was not expressly authorized by every potentially applicable agreement. Each agreement gave Plaintiff a choice, to file in small claims court or in arbitration. The agreements also require that, whether in arbitration or in small claims court, the consumer pursues relief on an individual basis. WarnerMedia, which wrote and imposed the contract, thus required that each customer make that choice individually. That other WarnerMedia customers may choose arbitration does not bind Plaintiff in any way. Ms. Aston-Martin retained the right to choose small claims court, and she acted pursuant to every potentially applicable contract when she did so. Therefore, her choice to file in small claims court cannot be considered a failure, neglect, or refusal to arbitrate.

WarnerMedia makes no argument in its motion that Ms. Aston-Martin did anything herself that violated the contract or constituted a refusal to arbitrate. In fact,

5

despite its long list of grievances against Plaintiff's counsel, it also fails to explain in any significant detail why any of those actions constitute a refusal to arbitrate anyway, but even if it did, none of her counsel's actions in representing other clients should be imputed to Ms. Aston-Martin or have any effect whatsoever on her right to have this claim heard in small claims court. Instead of something Plaintiff or her counsel did, WarnerMedia claims it has the right to compel arbitration based on *its own actions* in removing the case. According to the company, "[b]ecause Defendant removed this action, Plaintiff can no longer proceed in small claims court in Tennessee or elsewhere." (Doc. 20 at 7). Once again, WarnerMedia does not explain how its actions in removing the case somehow mean that it is "aggrieved by the alleged failure, neglect, or refusal *of another* to arbitrate." 9 U.S.C. § 4 (emphasis supplied).

The United States Supreme Court has stated that "[a]n indispensable element of [a party's] cause of action under § 4 for an arbitration order is the [other party's] refusal to arbitrate. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 (1983). The same is true for a motion to compel arbitration—the motion must be denied if there was no refusal to arbitrate by the opposing party. Beijing Shougang Mining Inv. Co. v. Mongolia, 11 F. 4th 144, 162 (2d Cir. 2021) (affirming denial of motion to compel arbitration where the other party did not refuse to arbitrate.) Other courts around the country have also addressed the issue. In a case

that concerned the National Labor Relations Act's six-month statute of limitations after a refusal to arbitrate, the Sixth Circuit held that such a refusal must be unequivocal to support a motion to compel arbitration and begin the clock on the statute. International Union v. Cummins, Inc., 434 F.3d 478, 484 (6th Cir. 2006) (citing Aluminum Brick and Glass Workers Int'l Union v. AAA Plumbing Pottery Corp., 991 F.2d 1545, 1548 (11th Cir. 1993) (holding that company's statements that "I'm sure you will agree that the matter is closed" and "I … would be interested to see what the Union's position is" were not unequivocal refusals to arbitrate.) For example, the Third Circuit held that if a party tries to compel arbitration before the adverse party has refuse to arbitrate, "it is doubtful that such a petition… would present an Article III court with a justiciable case or controversy." ACE American Ins. Co. v. Guerriero, 738 Fed. Appx. 72, 76 (3d Cir. 2018) (citing PaineWebber Inc. v. Faragalli, 61 F.3d 1063, 1067 (3d Cir. 1995)).

This case bears a strong resemblance to Transatlantic Lines LLC v. Amergent Techs, LLC, decided by the District of Connecticut in 2016. 186 F. Supp. 3d 223, 225 (D. Conn. 2016). In Transatlantic, the parties apparently had a dispute over the correct arbitral forum, but Amergent, the respondent, had already begun arbitration that was authorized by the contract. The Transatlantic court explicitly built its analysis on the arguments Plaintiff makes here, that there must be an active refusal to arbitrate to trigger the court's power to compel:

> Transatlantic's contention that the FAA "does not specifically require that a 'refusal' to arbitrate be a prerequisite to a petition to compel arbitration, but rather broadly empowers the Court to provide relief whenever there is any form of an impediment to arbitration" is not persuasive.

Id. at 227. The court further stated that "unless the respondent has resisted arbitration, the petitioner has not been aggrieved by anything and there is nothing for the court to compel." Id. at 226 (quoting SH Tankers Ltd. v. Koch Shipping Inc., 2012 WL 2357314 at *3 (S.D.N.Y. 2012)). The Transatlantic court ultimately determined that the petition to compel arbitration must be dismissed because "Amergent's attempt to arbitrate in California was not contrary to the parties' agreement. Because Amergent never refused to arbitrate … the court cannot find that there was a refusal to arbitrate on Amergent's part." Id. at 227. Likewise, in this case Ms. Aston-Martin's initiation of the small claims court case in the General Sessions Court of her home county was "not contrary to the parties' agreement," and, in fact, was explicitly authorized by that agreement. There is no basis for this Court to compel arbitration.

Furthermore, the Supreme Court has also made it clear that the FAA requires courts compelling arbitration "to enforce agreements to arbitrate according to their terms." CompuCredit Corp v. Greenwood, 565 U.S. 95, 98 (2012) (citing Dean Witter Reynolds, Inc. v Byrd, 470 U.S. 213, 221 (1985)). Here, it is undisputed that every conceivable agreement between the parties includes in its terms the right for

8

the consumer to file the case in small claims court. Even WarnerMedia concedes that it is not a breach of the agreement for Ms. Aston-Martin to do so. Given that the only power this court has regarding arbitration is to compel the parties to follow the terms of the agreement, there is nothing for the court to compel in this case. Not only did Ms. Aston-Martin follow the terms of the agreement when she filed in small claims court, if this court compelled arbitration "according to" those same terms, she would be well within her rights to file in small claims court again.

Because WarnerMedia cannot show that it is a party aggrieved by Wendy Aston-Martin's refusal to follow the agreement, it cannot succeed on its motion to compel arbitration. This Court must deny that motion.

### C. Even if the Court Could Compel Arbitration, it Could Not Do So Under the New Terms, Which Ms. Aston-Martin Properly Opted Out Of.

WarnerMedia argues that the most recent version of its terms must apply, and, baselessly, that Plaintiff somehow "conceded" that these terms apply simply by citing all the sets of terms in her remand motion to demonstrate their uniformity with respect to the small claims court provision. It should be clear to the court that no such concession has been made. Furthermore, the final set of terms that WarnerMedia wants to apply cannot be enforced against Ms. Aston-Martin because she validly rejected the new arbitration provision and opted to keep the provision in the prior contract, as that contract expressly authorized her to do.

9

A year and a half ago, a class action was filed alleging the same claims that Plaintiff brought in small claims court. See McDaniel v. Home Box Off., Inc., No. 22-CV-1942 (VEC), 2023 WL 1069849 at *1 (S.D.N.Y. Jan. 27, 2023). There is no Plaintiff was a putative member of this class, which WarnerMedia successfully compelled to arbitration in the American Arbitration Association ("AAA"). Furthermore, the terms under which WarnerMedia compelled arbitration contained the following provision with respect to "Future Changes to Arbitration Provision:"

> **(g) Future Changes to Arbitration Provision:** Notwithstanding any provision in this agreement to the contrary, we agree that if we make any future change to this arbitration provision (other than a change to the Notice Address), you may reject any such change by sending us written notice within 30 days of the change to the arbitration Notice Address provided above. By rejecting any future change, you are agreeing that you will arbitrate any dispute between us in accordance with the language of this provision.

(Doc. 24-4 at 41). There can be no doubt here that WarnerMedia made a future to change to the arbitration provision as contemplated by this section; it is the very change WarnerMedia is attempting to enforce now. Nor is there any serious doubt that Wendy Aston-Martin followed the steps prescribed in this provision, as WarnerMedia itself admitted while this litigation was in Tennessee, attaching her opt out as an exhibit no less than three times. (See Docs 18-2; 21-7; and 24-7.)

WarnerMedia argues that the opinion in the Brooks case found that these opt-outs were entirely ineffective (at least with respect to the plaintiffs that were in that case) when it found that the plaintiffs could not opt out of the contract completely

10

and continue to use the service. With all due respect to Judge Failla, this approach misstates the question and misses the point. Even if it is entirely true that a consumer such as Ms. Aston-Martin cannot continue to use the service while opting out of the contract entirely, neither the Brooks court nor WarnerMedia ever explains why this means that the company can just ignore its previous promise to allow customers to retain the AAA Arbitration provision as part of any new contract by opting out of changes to that provision. The contract plainly and obviously gave Wendy Aston-Martin the right to "reject[] any future change" and "arbitrate any dispute between us in accordance with the language of this provision." She just as clearly followed the prescribed steps to avail herself of that right. Thus, even if she could not opt out of the new terms entirely, she could and did validly opt to retain the arbitration provisions of the old terms. Therefore, if this court determines that it should compel arbitration (despite the fact that Ms. Aston-Martin never refused to arbitrate), it should compel that arbitration to happen before the AAA.

It should also be noted that Courts throughout the country have disfavored attempts to change arbitration agreements after a party learned of a dispute. In Russell v. CitiGroup, Inc., the Court of Appeals concluded that a changed agreement did not apply to past disputes, emphasizing the fact that the company communicated the change directly to the Plaintiff rather than to counsel. 748 F. 3d 677, 680 (6th Cir. 2014). Thus, far from being somehow indicative of foul play or that Plaintiff

somehow did not properly opt out, communication through counsel is actually the proper channel when a company that knows that a large number of its customers are suing it tries to change the arbitration agreement mid-stream. See Dasher v. RBC Bank (USA), 882 F.3d 1017, 1022 (11th Cir. 2018). In Dasher, the Eleventh Circuit refused to countenance a change in terms during an ongoing dispute that was not communicated to Dasher's counsel:

> Importantly, PNC knew in no uncertain terms that Dasher was contesting arbitration and that he was represented by counsel specifically employed for the purpose of handling the matter of the overdraft litigation. Any communication must be understood in context, not viewed in the abstract. In this context, the risks of communicating directly with the opposing party as to a purportedly court-evicting amendment outside the presence of opposing counsel are manifest.
>
>     *    *    *
>
> We do not mean to suggest PNC's litigation counsel communicated directly with Dasher. Nor do we find it necessary to adopt Dasher's characterization of PNC's actions as purposeful avoidance of disclosure or nefarious sandbagging. Quite simply, we do not intend to write an ethics opinion. We merely find the failure to communicate through counsel material to the important question of whether Dasher agreed to accept the February 2013 amendment. Given the wholly equivocal "communications" from Dasher after PNC sent the February 2013 amendments, given the fact that the amendments (if accepted and interpreted as argued by PNC) would conclusively establish the need to arbitrate the existing litigation, and given the wholesale failure of PNC to communicate the proposed amendments to known litigation counsel for Dasher, we conclude PNC failed to show Dasher agreed to the addition of the arbitration provision in the February 2013 amendment.

Id. at 1023.

In this case, WarnerMedia likewise knew that many thousands of its customers were part of the class that sued it because it violated the Video Privacy Protection Act. It intentionally sought arbitration of that class under an agreement that not only called for arbitration with the AAA but allowed its customers to choose to retain that arbitration provision if the company changed it. Now it says that this promise was as thin as the paper it wasn't printed on, this being an entirely online contract, and it can simply revoke its customers' clearly spelled-out right to retain the AAA Arbitration provision because it has decided AAA Arbitration is too expensive. Yet, somehow, WarnerMedia accuses the plaintiff and her counsel of gamesmanship and manipulation.

Ms. Aston-Martin agreed to the contract containing the provision that allowed her to reject any new arbitration terms and arbitrate future disputes according to the old terms, i.e., with the AAA. There is no legitimate argument that she did not, virtually immediately, comply with the steps required by this provision so that she could continue to arbitrate under the old terms. The new terms cannot be enforced against her, and this court cannot compel arbitration under them, both for the reasons described in parts A and B, and because she never agreed to arbitrate under the new terms. This Court should deny WarnerMedia's motion. If this Court nevertheless compels arbitration, it should compel WarnerMedia to arbitrate in the AAA.

Respectfully submitted this 16th day of October, 2024,

/s/     Dargan M. Ware
Attorney for Plaintiff

Dargan M. Ware
DAVIS & NORRIS, LLP
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
dware@davisnorris.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on all counsel of record through the CM/ECF system of the United States District Court for the Southern District of New York on October 16, 2024.

/s/     Dargan M. Ware
Attorney for Plaintiff